AYER & a. v. MESSER & a.

When a bill in equity does not call upon the defendant to make an answer under oath, such an answer is pleading and not evidence.

The settlement of an estate in the probate court cannot ordinarily be revised on a bill in equity.

BILL IN EQUITY.  Facts found by a referee.

*Bartlett*, for the plaintiffs.

When the defendant's oath is not called for by the bill, his sworn answer is mere pleading.  *Hall* v. *Congdon*, 55 N. H. 105; *Winsor* v. *Bailey*, 55 N. H. 223.

A tenant for life cannot sell wood and timber for any purpose. *Miles* v. *Miles*, 32 N. H. 147.  He cannot justify cutting the same for firewood or for fencing, unless he uses the trees for those purposes on the land.  *Dennett* v. *Dennett*, 43 N. H. 500; *Fuller* v. *Wason*, 7 N. H. 343.  Cutting trees on wood-land by a tenant for life, not for the use of the estate, is waste, although done with the intention of restoring land to the condition of pasture-land, in which it was when the estate for life began, and although it would be good husbandry in an owner in fee so to restore it.  *Clark* v. *Holden*, 7 Gray 8.  A tenant for life is liable to account for the value of the trees wrongfully cut by him from the estate, with interest from the time they were cut.  *Phillips* v. *Allen*, 7 Allen 115.  The tenant, where there is no positive agreement dispensing with the engagement to cultivate the farm in a husbandmanlike manner, is bound to spend the hay on the farm as a means of preserving and continuing its capacity of production.  *Perry* v. *Carr*, 44 N. H. 120; *Moulton* v. *Robinson*, 27 N. H. 561.

*Chas. U. Bell* (of Mass.), for the defendant, John A. Messer.

Waste is bad husbandry, injurious to the reversion.  Upon the question of bad husbandry, the only proper evidence is the custom of good farmers managing their own property.  What a man of ordinary capacity will do with his own, is the universal legal standard of what is reasonable.  The tenant is allowed to do "what good husbandry permits," and "what a prudent owner of the fee would do, having regard to the nature and situation of the land." *Chase* v. *Hazelton*, 7 N. H. 171; *Webster* v. *Webster*, 33 N. H. 25; *Jackson* v. *Brownson*, 7 Johns. 227; *Stroebe* v. *Fehl*, 22 Wis. 337; *Woodward* v. *Gates*, 38 Ga. 205; *Drown* v. *Smith*, 52 Me. 141; *Bagot* v. *Bagot*, 32 Beav. 509.

It is uniformly laid down that the law of waste is more stringent in England than here.  We therefore cite mostly English authori-

ties. "The tenant may cut down all trees which will not be timber, and are not trees for ornament or the protection of the estate." *Honywood* v. *Honywood*, L. R., 18 Eq. 306. "He may cut coppices and underwoods according to custom and at reasonable time, and their fixtures." *Pidgely* v. *Rawling*, 2 Coll. 275; *Edge* v. *Pemberton*, 12 Mee. & W. 187; *Bagot* v. *Bagot*, 32 Beav. 517; *Bateman* v. *Hotchkin*, 31 Beav. 486. "He may cut down trees in the course of proper management in order to allow the growth of other timber." *Cowley* v. *Wellesley*, L. R., 1 Eq. 656. "Cutting trees under twenty years old, though timber trees, is not waste if they are cut seasonably and in a proper manner, that is, according to what had been done with them before, or according to the custom of the neighborhood." *Dunn* v. *Bryan*, 7 Ir. Eq. 143. In Kerr on Injunctions 240, it is said, "It is not waste to cut down trees which are not timber either by law or custom, or from the situation in which they are placed, unless some special prejudice arises thereby to the inheritance. Nor is the proper and regular thinning of a wood for the purpose of improving the trees waste, provided it is done in a reasonable and husbandmanlike manner." In *Honywood* v. *Honywood*, L. R., 18 Eq. 308, 309, the Master of the Rolls says, "It is settled law that a tenant for life, impeachable for waste, may cut timber-like trees under twenty years of age for the necessary purpose of preserving or allowing the growth of other trees." "He may cut all that is not timber, with certain exceptions." *Page* 310. The only thing a tenant is forbidden to cut, then, is timber. As to what is timber, a full and careful definition is given in *Honywood* v. *Honywood*, L. R., 18 Eq. 309.

So far as there are any American cases which seem to hold a more stringent rule, on examination it will be found that they do not raise the point above discussed. All the original forest here was, beyond question, timber. The reasons for a more liberal rule in this country are stated in all the American cases. I would only add one thing, which has lately grown to be the most serious of all,—the taxes, which the tenant must pay. The legal maxim may be justly inverted: *Qui sentit onus, debet sentire et commodum.*

DOE, C. J. The bill did not call for a sworn answer; and the answer, though under oath, is pleading and not evidence.

The parties, as devisees and legatees, have various interests in certain property. If there was fraud or error in the settlement of the testator's estate, against which the plaintiffs are entitled to relief, the probate court, on their petition, can modify or vacate its decrees, open the settlement, and do justice in appropriate proceedings. No cause is shown for settling the estate, or revising the settlement of it, in this suit.

As life tenant of a part of the property, and trustee or managing partner of other parts, the defendant, John A. Messer, has

committed waste and mismanaged to an extent that requires the intervention of equity. The plaintiffs are entitled to partition and other relief. By reason of the complicated and obscure modes in which the business of the parties has been done, there are difficulties in ascertaining their exact rights. But these difficulties grow out of the condition of the facts, and not out of any uncertainty of law. It is one of the cases in which a precise account of items and details is impossible. And what cannot be reduced to a mathematical specification, must be adjusted upon an estimate as accurate as is practicable.

The referee found that Messer, the tenant for life, committed waste by cutting and selling wood, selling hay, and exhausting the land. Messer offered evidence tending to show that it was the custom of the vicinity to sell wood and hay "as money crops." But the referee ruled that "such a custom does not apply to estates for life." It is not necessary to inquire whether custom can ever be evidence of what good husbandry is, in any respect, or in any particular region. It does not appear probable that the ruling of the referee on this point unjustly affected Messer's rights, or that the evidence of the custom was worth hearing. An owner of the fee may sometimes change his investment to advantage by selling all his wood, and all his hay, and devastating his land. But it is the right of a remainder-man that his investment shall not be consumed by the tenant for life. The good husbandry which the latter is bound to practise is not merely such as is profitable for him. It comprehends the interest of the remainder-man, and preserves his estate from waste. As, upon the facts found, we are not able to dispose of the whole case, and a further hearing before some member of the court will be necessary for a decision of all the matters in controversy, the evidence of custom will be examined at the same time for the purpose of seeing whether it is relevant and entitled to any weight.

*Case discharged.*

Smith, J., did not sit: the others concurred.